Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**WYNDHAM HOTELS AND RESORTS, LLC,**

                    **Plaintiff,**

        **v.**

**WELCOME HOTEL GROUP LLC, EDISON HOLDINGS NJ LLC, and DEEPAK VISHWANATH,**

                    **Defendants.**

Civil Action No. 17-4065 (ES) (JAD)

OPINION

SALAS, DISTRICT JUDGE

Before the Court is plaintiff Wyndham Hotels and Resorts, LLC's ("Plaintiff") unopposed motion for default judgment against defendants Welcome Hotel Group LLC ("WHG"), Edison Holdings NJ LLC ("Edison Holdings"), and Deepak Vishwanath (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 42 ("Motion")). The Court has considered Plaintiff's submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). For the following reasons, Plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    Background

Plaintiff filed its complaint against Defendants asserting, *inter alia*, claims for (i) federal trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* (Counts I & II) and (ii) breach of contract (Counts V, VII, IX & X). (D.E. No. 1 ("Complaint" or "Compl."); *see also* D.E. No. 45). Plaintiff owns and has the exclusive rights to service marks WYNDHAM and WYNDHAM GARDEN and other related marks (the "Wyndham® Marks"), which it uses in

connection with its lodging facilities.  (Compl. ¶¶ 10–14).  The Wyndham® Marks are allegedly known, recognized, and associated by consumers with Plaintiff's high-value lodging facilities and services.  (*Id.* ¶ 14).  On March 31, 2014, WHG entered into a fifteen-year franchise agreement with Plaintiff for the operation of a Wyndham guest lodging facility on a premises owned by Edison Holdings and leased by WHG.  (*Id.* ¶ 27 & Ex. A ("Franchise Agreement" or "Franchise Agmt."[1])).  The Franchise Agreement was executed by Vishwanath on behalf of WHG.  (Compl. ¶ 28; Franchise Agmt. at 57).  Attached to the Franchise Agreement is a personal guaranty whereby Vishwanath agreed that "upon default by [WHG], [Vishwanath] will immediately make each payment and perform each obligation required of [WHG] under the Agreement."  (Franchise Agmt. at 64).  Pursuant to the Franchise Agreement, WHG was permitted to use the Wyndham® Marks in association with the operation and use of the lodging facility as part of Plaintiff's franchise system.  (Compl. ¶ 30; Franchise Agmt. at 37).  In exchange, Defendants agreed to pay, *inter alia*, royalties, marketing and global sales fees, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").  (Compl. ¶ 33; Franchise Agmt. at 28, 56 & 59).

On May 20, 2016, Plaintiff sent WHG a letter notifying WHG of its monetary default in the amount of $154,415.11 due to its failure to timely pay certain Recurring Fees.  (Compl. ¶ 46 & Ex. D at 96).  From August 5, 2016, to February 21, 2017, Plaintiff sent three additional letters notifying WHG of its continuing monetary default.  (Compl. ¶¶ 47–49; *id.* Exs. E, F & G ("Notice Letters") at 107, 117 & 129).  By February 21, 2017, WHG owed approximately $240,449.00 in outstanding Recurring Fees.  (Compl. ¶ 49 &. Ex. G ("Final Notice") at 129).  On or around April 5, 2017, WHG allegedly notified Plaintiff by letter that it was ceasing operation as a Wyndham® guest lodging facility.  (Compl. ¶ 50; *see id.* Ex. H at 141 ("Ack. of Term.")).  In response, Plaintiff

---

[1]      Unless otherwise specified, citations to the exhibits to the Complaint refer to the pagination generated by the Court's Electronic Case Filing system.

sent WHG a letter dated April 7, 2017, acknowledging WHG's termination of the Franchise Agreement.[2]  (Compl. ¶ 51; Ack. of Term.).  Plaintiff also advised WHG that it must: (i) pay all outstanding Recurring Fees, (ii) pay liquidated damages in an amount of $394,000.00, and (iii) remove all signage bearing the Wyndham® Marks.  (Compl. ¶ 51; Ack. of Term.).  Plaintiff alleges that WHG and Edison Holdings continued to use the Wyndham® Marks without authorization such that the premises is identifiable as a Wyndham® guest lodging facility.  (Compl. ¶¶ 56–57).

Plaintiff commenced this action on June 6, 2017.  The Complaint and summons were served on Defendants on or about June 28, 2017.  (D.E. No. 6).  Defendants initially filed an answer but subsequently failed to respond to discovery requests, including appearing for deposition.  (D.E. Nos. 10, 32 & 37).  On November 6, 2019, Plaintiff filed a motion to strike Defendants' answer and sought the entry of default.  (D.E. No. 40).  On December 10, 2019, Magistrate Judge Dickson granted Plaintiff's motion and struck Defendants' answer from the record.  (D.E. No. 41).  Judge Dickson also directed the Clerk of Court to enter default against Defendants (*id.*), which the Clerk of Court did on December 11, 2019.

On January 10, 2020, Plaintiff filed the Motion that is currently before the Court.  (D.E. No. 42).  On December 8, 2020, pursuant to the Court's order directing Plaintiff to clarify what claims Plaintiff moves under (D.E. No. 44), Plaintiff submitted a letter withdrawing the following claims: (i) injunctive relief against WHG and Edison Holdings (Counts I(a) & II(a)); (ii) demand for accounting against WHG (Count III); (iii) demand for accounting against Edison Holdings (Count IV); (iv) actual damages against WHG for breach of contract (Count VI); (v) unjust

---

[2]       There is a discrepancy as to which party terminated the Franchise Agreement.  Pursuant to section 17 of the Franchise Agreement, if WHG ceased operation as a Wyndham® guest lodging facility, Plaintiff had the option to terminate the Franchise Agreement if it provided proper notice.  (Franchise Agmt. at 45).  According to its Complaint, Plaintiff did not provide notice of termination—it merely acknowledged WHG's termination.  (Compl. ¶ 51; *see* Ack. of Term.).  Regardless, the Court, as it must, will take allegations in the Complaint as true and deem the Franchise Agreement terminated by WHG.

enrichment claim against WHG; (vi) unjust enrichment claim against Edison Holdings (Counts X(b) & XI); and (vii) injunctive relief against WHG to proceed with self-help (Count XII).  (D.E. No. 45).  As a result, the remaining counts are as follows: (i) infringement damages against WHG and Edison Holdings for violation of the Lanham Act (Counts I(b) & II(b)); (ii) liquidated damages against WHG for breach of contract (Count V); (iii) outstanding recurring fees against WHG for breach of contract (Count VII); (iv) liquidated damages and outstanding recurring fees against Vishwanath for breach of guaranty (Count IX(a)); and (v) liquidated damages, outstanding recurring fees, and infringement damages against Edison Holdings under an alter ego theory (Count X(a)).  (*Id.*).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 55, the Court may enter default judgment against a party that fails to answer or otherwise defend against claims asserted against it.  To obtain a default judgment pursuant to Rule 55(b), the moving party must first obtain an entry of default pursuant to Rule 55(a).  *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006).  After obtaining entry of default, parties are not entitled to the subsequent entry of default judgment as of right; rather, it is within the discretion of the court whether to enter default judgment.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

Before entering default judgment, the Court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages."  *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018).  A party seeking default judgment is not entitled to relief as a matter of right; rather, the Court may enter default judgment

"only if the plaintiff's factual allegations establish the right to the requested relief." *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC.*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (internal quotation marks omitted) (quoting *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011)).  At this juncture, the Court must accept all factual allegations as true, except with respect to damages. *Premium Sports, Inc. v. Silva*, No. 15-1071, 2016 WL 223702, at *1 (D.N.J. Jan. 19, 2016).

In addition, the Court must consider the following three factors prior to granting default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  A meritorious defense is one that "if established at trial, would completely bar plaintiff's recovery." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (quoting *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)).  Furthermore, a defendant's culpable conduct in allowing default is a relevant consideration for a district court. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

## III.  Discussion

### A.  Jurisdiction and Service

When a party requests default judgment against a party that fails to file a responsive pleading, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008).  The Court finds that it has both subject matter jurisdiction over this matter and personal jurisdiction over Defendants.

#### i.  Subject Matter Jurisdiction

Plaintiff alleges a claim for trademark infringement under Section 32 of the Lanham Act

pursuant to 15 U.S.C. § 1114 (Compl. ¶¶ 58–78), thereby invoking federal question jurisdiction. *See* 28 U.S.C. § 1331. Accordingly, the Court has subject matter jurisdiction over Counts I(b) and II(b) and supplemental jurisdiction over Plaintiff's remaining state law claims (Counts V, VII, IX(a), & X(a)). *See* 28 U.S.C. § 1367(a); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 706 (2006); *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996).

### ii.   *Personal Jurisdiction & Service of Process*

Taking Plaintiff's allegations as true, as it must, the Court finds that Defendants WHG and Edison Holdings are each limited liability companies organized and existing under the laws of the State of New Jersey and operating their principal places of business at the same address: 1 West Lafayette Street, Trenton, NJ 08608. (Compl. ¶¶ 2–3). The Court thus has personal jurisdiction over WHG and Edison Holdings. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[W]ith respect to personal jurisdiction of a company, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (citation omitted) (alteration in original).

Plaintiff alleges that Vishwanath is a citizen of New Jersey, yet it served Vishwanath by certified mail at his New York residence, which is "the last known and current address" for Vishwanath. (D.E. No. 6 at 19 & 22). It is thus unclear that the Court has general personal jurisdiction over Vishwanath through his place of domicile. Nonetheless, the Court finds that Vishwanath consented to the Court's personal jurisdiction through the Franchise Agreement, which he agreed to be bound by pursuant to his status as guarantor. *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (a party may consent to personal jurisdiction through a contractual forum selection clause); (Franchise Agmt. at 64 ("[Vishwanath] agree[s] to be bound by all the terms and conditions of the . . . Franchise Agreement . . . ." ); *id.* at 53 ("[F]ranchisee

hereby irrevocably submits itself to the non-exclusive personal jurisdiction of the state and the federal district courts located in the state, county or judicial district in which Franchisor's principal place of business is located and waives all defenses to personal jurisdiction in such courts."); Compl. ¶ 1 ("Plaintiff . . . is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey."). Accordingly, the Court finds that it has personal jurisdiction over Vishwanath.

### iii.  Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Philadelphia v. Am. Helper, Inc.*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Service of process may be effected by following state law "in the state where the district court is located . . . ." Fed. R. Civ. P. 4(e)(1).  In New Jersey, "if personal service cannot be effected after a reasonable and good faith attempt, . . . service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant or . . . to defendant's place of business or employment."  N.J. Ct. R. 4:4-3(a).

Plaintiff alleges that, despite diligent efforts and inquiry, the process server was unable to personally serve Defendants.  (D.E. No. 6 at 2; *see also id.* at 7–8, 14–15 & 21–22).  Plaintiff thus served Defendants by certified and regular mail, return receipt requested, on June 28, 2017.  (*Id.* at 4, 11 & 18).  The Court finds that process was properly served on Defendants.  Fed. R. Civ. P. 4(e)(1); N.J. Ct. R. 4:4-3(a).

### B.    Sufficiency of the Pleading

### i.   Counts V, VII, IX & X: Breach of Contract

Next, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause

of action, since a party in default does not admit mere conclusions of law.'" *Primo No. One in Produce, Inc. v. VG Sales LLC*, No. 16-1395, 2017 WL 202169, at *2 (D.N.J. Jan. 18, 2017) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)).  To establish a legitimate cause of action for an alleged breach of contract, a plaintiff must show: (i) a valid contract, (ii) a breach of that contract, and (iii) damages resulting from the breach.  *See Howard Johnson Int'l v. Jay Shree Ganesh*, No. 17-4658, 2018 WL 4005744, at *3 (D.N.J. Aug. 22, 2018).

Plaintiff has alleged that it entered into a valid contract with WHG on March 31, 2014; there is no indication that the Franchise Agreement is invalid.  (*See generally* Franchise Agmt.). Pursuant to the Franchise Agreement, WHG agreed to operate the facility for fifteen years as a franchisee using the Wyndham® Marks for this operation.  (Compl. ¶ 30; Franchise Agmt. at 58). In exchange, WHG was obligated to pay Recurring Fees.  (Compl. ¶ 33 (citing Franchise Agmt. at 28, 56 & 59)).  Plaintiff alleges that WHG breached the Franchise Agreement when it "repeatedly failed to timely pay Recurring Fees" and failed to cure its monetary default.  (Compl. ¶¶ 45–49; *see also* Notice Letters).  As a result, WHG is obligated to pay liquidated damages in an amount of $394,000 and outstanding Recurring Fees pursuant to the Franchise Agreement.[3]  (Franchise Agmt. at 28, 56 & 59).

Additionally, New Jersey courts have typically understood a personal guaranty to be a contract and "must be interpreted according to its clear terms so as to effect the objective expectations of the parties."  *See, e.g.*, *Housatonic Bank and Trust Co. v. Fleming*, 560 A.2d 97, 99 (N.J. Super. Ct. App. Div. 1989).  Guaranty agreements are to be strictly construed, and "[a] guarantor cannot be held liable beyond the strict terms of the agreement."  *Modern Techs. Grp.,*

---

[3]     The Court notes that Plaintiff wrongly maintains that it incurred trademark infringement damages as a result of breach of the Franchise Agreement.  (D.E. 42-3 at 7 ("Pl. Mov. Br.")).  Such damages arise from trademark infringement and are separate and apart from damages caused by the alleged breach of the Franchise Agreement.

*Inc. v. Danzi*, No. A-5287-08T3, 2010 WL 4107747, at *6 (N.J. Super. Ct. App. Div. Aug. 12, 2010).  Under the terms of the Guaranty, Vishwanath is liable for "each payment and . . . obligation required of [WHG] under the [Franchise] Agreement."  (Franchise Agrmt. at 64).  Thus, because Vishwanath failed to make any payments on behalf of WHG, the Court finds that the Complaint sufficiently alleges that Vishwanath also breached the Franchise Agreement.

> ### ii.   *Alter Ego Theory of Liability*[4]

The Court does not find that liability extends to Edison Holdings.  While alter ego liability typically must be established by clear and convincing evidence and is "notoriously difficult" to prove, at the default judgment stage "the determination of alter ego liability . . . depends only on the allegations in the pleadings and does not require any fact finding at all."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001); *Doctor's Assoc. Inc. v. Singh-Loodu*, No. 13-3030, 2014 WL 4988389, at *3 (D.N.J. Oct. 6, 2014).  In New Jersey, a court should pierce the corporate veil only if two elements are met: (i) "the subsidiary was dominated by the parent corporation," and (ii) "adherence to the fiction of separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law."  *Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. App. Div. 2006).

Plaintiff alleges that WHG and Edison Holdings entered into a lease agreement where WHG leases the facility at issue in this case from Edison Holdings.  (Compl. ¶¶ 19–20).  Vishwanath, who allegedly is a "member" of both WHG and Edison Holdings, signed the lease agreement on behalf of Edison Holdings.  (*Id.* ¶¶ 21–22).  WHG subsequently entered into a management agreement with a third party and, as with the Franchise Agreement, listed itself as

---

[4]      The Court notes that Plaintiff sought attorney's fees in its Complaint but failed to mention such fees in its brief.  (Compl. ¶ 113; *see generally* D.E. No. 42). As such, the Court considers entitlement to attorney's fees waived.

owner of the facility.  (*Id.* ¶¶ 23 & 25).  This time, Defendant Vishwanath signed this management agreement on behalf of WHG.  (*Id.* ¶ 24).  Based on these allegations, Plaintiff argues that "it is clear [that] Edison Holdings was the alter-ego of" WHG.  (Pl. Mov. Br. at 8).  Plaintiff contends that Edison Holdings and WHG both represented that they were the owners of the facility; yet they entered into a lease agreement with each other, through which rental payments were exchanged. (*Id.*).  Moreover, Plaintiff argues that Vishwanath executed agreements on behalf of WHG and Edison Holdings, indicating that he had control over both companies.  (*Id.*).  Ultimately, Plaintiff argues that "there is a unity of interest and ownership," and that Edison Holdings and WHG "failed to observe corporate formalities, including intermingling of corporate identity, assets, and management, commingling of funds, and undercapitalization of [WHG]."  (*Id.*; *see also* Compl. ¶ 112).

The Court is not persuaded.  As an initial matter, the Complaint includes no allegation regarding WHG's undercapitalization.  Further, while Attachment A of the Franchise Agreement shows that Vishwanath has a 2.00% ownership interest in WHG, nowhere in the Complaint indicates that Vishwanath has an ownership interest in Edison Holdings, nor does Plaintiff allege that WHG and Edison Holdings have ownership interests in each other.  (*See* Franchise Agmt. at 58).  The Court thus cannot conclude that a unity of ownership exists among Defendants.  It is concerning that Vishwanath executed agreements on behalf of both WHG and Edison Holdings, and that WHG repeatedly represented itself as the owner of the facility when it only leased the property from Edison Holdings.  However, these allegations, without more, are insufficient to support the argument that one entity is "a mere instrumentality" of the other such that one so dominates the other that the latter "ha[s] no separate existence but merely a conduit" of the former. *State Dep't of Environ. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983); *see also Trs. Of*

the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 192 (3d Cir. 2003); Verni, 903 A.2d at 498.  Without sufficient allegations regarding WHG's and Edison Holding's corporate structures and their practice regarding observing corporate formalities, the Court similarly cannot find, and Plaintiff provides no law to support, that the lease agreement between WHG and Edison Holdings constitutes "intermingling of corporate assets" or "commingling of funds."  Because the Court finds that Plaintiff fails to properly allege a cause of action against Edison Holdings through the alter-ego theory, it denies default judgment against Edison Holdings.

### iii.  Counts I & II: Trademark Infringement

To establish a legitimate cause of action for an alleged violation of the Lanham Act, a plaintiff must show that: (1) "it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Additionally, "to prevail on a trademark infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized."  Piquante Brands Int'l, Ltd. v. Chloe Foods Corp., No. 8-4248, 2009 WL 1687484, at *3 (D.N.J. June 16, 2009) (citing Opticians Assoc. of America v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990) (hereinafter "Opticians"). "The first two elements are satisfied by registration and ownership of the relevant trademarks." Coach, Inc. v. Quisqueya Agency Inc., No. 13-3261, 2014 WL 3345434, at *1 (D.N.J. July 8, 2014).

Plaintiff sufficiently alleges that it is the owner of valid and legally protected Wyndham® Marks in satisfaction of the first two elements.  (Compl. ¶¶ 10–13); E.A. Sween Co. v. Deli Express of Tenafly, LLC., 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A 'certificate of registration issued by

the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.") (quoting *Coach, Inc. v. Cosmetic House*, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011)).  The Court also finds that Plaintiff sufficiently alleges that WHG is no longer authorized to use the Wyndham® Marks or any mark that is substantially similar to such marks.  (*See* Compl. ¶¶ 14–18; Franchise Agmt. at 38; Final Notice at 129).  Accordingly, the Court must assess whether Plaintiff has also sufficiently alleged that WHG's use of the Wyndham® Marks gives rise to a likelihood of confusion.

A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quoting *Ford Motor Co., v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)); *see also Lorillard Techs., Inc. v. NJ Ale House, LCC*, No. 14-2044, 2015 WL 1197531, at *8 (D.N.J. Mar. 13, 2015).  The Third Circuit has established ten non-exhaustive factors when conducting a likelihood of confusion analysis but has "repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983) [5]; *A&H Sportswear*, 237 F.3d at 210.  Here, the Court need not conduct a detailed analysis under each *Lapp* factor because the

---

[5]      The ten non-exhaustive *Lapp* factors include: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and] (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market. *Lapp*, 721 F.2d at 463.

Complaint alleges that, based on WHG's failure to remove the Wyndham® Marks after termination of the Agreement, the allegedly infringed marks are Plaintiff's exact marks. (Compl. ¶¶ 54–57). Accordingly, there is little doubt that WHG's concurrent use of the Wyndham® Marks is "highly likely" to cause consumer confusion as to Defendant's affiliation with Plaintiff. *See U. S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) ("there is great likelihood of confusion when an infringer uses the exact trademark"); *Opticians*, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"). The Complaint thus sufficiently alleges that WHG's use of the Wyndham® Marks after termination of the Franchise Agreement infringes on Plaintiff's marks under 15 U.S.C. § 1114.

## C. Appropriateness of Default Judgment

To determine whether granting default judgment is proper, the Court must make factual findings "as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). Courts have noted, however, that "these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default." *Days Inn Worldwide, Inc. v. Mayu & Roshan, LLC.*, No. 06-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (citation omitted). Where, as here, a defendant fails to defend, courts have held that they are "not in a position . . . to determine whether [the defendant has] a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* (internal quotation marks and citation omitted).

Moreover, Defendants' initial answer to Plaintiff's complaint was subsequently stricken due to Defendants' failure to respond to discovery requests, including appearing for deposition.

(D.E. No. 41). Defendants also have not responded to Plaintiff's Motion. In such a situation, denying default would prejudice the plaintiff because there would be no recourse against the defendant. *See Days Inn*, 2007 WL 1674485, at *5; *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff "will suffer prejudice if the Court does not enter default judgment as [p]laintiff has no other means of seeking damages for the harm caused by [d]efendant"). Thus, the Court finds that default judgment is proper in this case.

### D.    Damages

Plaintiff seeks outstanding Recurring Fees, liquidated damages, and infringement damages in the total amount of $1,061,111.72 against Defendants. (D.E. No. 42-2 at 2). The only allegations that are not considered true upon the entry of a default judgment are those involving damages. *Comdyne I v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "If the damages are not for a 'sum certain or for a sum which can by computation be made certain,' the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Id.* (quoting Fed. R. Civ. P. 55(b)(1)–(2)). Here, the Court is satisfied that Plaintiff's requests for damages are for a sum certain and that no hearing is required. Additionally, as discussed above, because Plaintiff fails to assert a claim against Edison Holdings, the Court denies any damages sought against Edison Holdings.

#### i.   Recurring Fees

Pursuant to Sections 3, 30.4, and Attachment B of the Franchise Agreement, WHG was obligated to make periodic payments to Plaintiff for Recurring Fees. (Franchise Agmt. at 28, 56 & 59). Plaintiff seeks Recurring Fees in the amount of $378,005.42, which includes a 1.5% interest pursuant to Section 3.F of the Franchise Agreement. (Pl. Mov. Br. at 9; D.E. 42-5 ("Fenimore

Aff.")) Ex. K).  As support, Plaintiff attaches an itemized statement dated December 15, 2019, which lists Recurring Fees incurred from October 2015 to September 2017.  (Fenimore Aff. at 154–64).  The Court finds that Plaintiff's submissions sufficiently establish that it is entitled to Recurring Fees in the amount of $378,005.42 against WHG.  As discussed above, because Vishwanath, as WHG's personal guarantor, agreed to make each payment and perform each obligation required of WHG under the Franchise Agreement, he too is liable for outstanding Recurring Fees accrued as of the date of termination.  (Compl. ¶¶ 45–49; Franchise Agmt. at 64).

### ii.  Liquidated Damages

Whether an unambiguous liquidated damages clause is valid and enforceable is a question of law for the court.  *Naporano Assocs., L.P. v. B & P Builders*, 706 A.2d 1123, 1127 (N.J. Super. Ct. App. Div. 1998).  "[U]nder New Jersey law, 'the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court.'"  *Super 8 Motels, Inc. v. Kumar*, No. 06-5231, 2008 WL 878426, at *5 (D.N.J. Apr. 1, 2008) (quoting *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 284 (3d Cir. 1995).

Plaintiff seeks a lump sum of $394,000 in liquidated damages from both WHG and Vishwanath pursuant to the terms of Sections 18.C and 30.3 of the Franchise Agreement.[6]  (Compl. ¶ 89; Franchise Agmt. at 47 & 55).  Plaintiff further asserts that it is entitled to interest on this amount at the legal interest rate of 1.5% per month from May 6, 2017, 30 days from the date of termination, to February 3, 2020, the anticipated return date of Plaintiff's Motion.  (Pl. Mov. Br. at 10).  Accordingly, Plaintiff seeks $588,882.90 in total for liquidated damages.  (*Id.* at 10).

---

[6]      The Court notes that the Franchise Agreement contains two Sections "30.3," one titled "Liquidated Damages" and the other "Transfer Rights."  (Franchise Agmt. at 55–56).  The discussion in this Opinion pertains to Section 30.3 entitled "Liquidated Damages" at page 55 of the Franchise Agreement.

Though the Franchise Agreement "does not contain a provision relating to interest to be paid on liquidated damages," the Court finds it proper to exercise its discretion in awarding prejudgment interest in the amount of $194,882.90. *Super 8 Motels*, 2008 WL 878426, at *5–6 (exercising discretion to award pre-judgment interest on liquidated damages where the franchise agreement was silent as to interest to be paid on liquidated damages). The Court agrees with Plaintiff's calculation of interest based on the $394,000 lump sum and a 1.5% per month legal interest rate. (*See* Pl. Mov. Br. at 10 (calculating interest using a 18% per year rates and resulting in about $194.30 in interest per day.)) As discussed before, liability extends to Vishwanath according to the explicit terms of the Guaranty whereby he agreed "to be bound by all the terms and conditions of the . . . Franchise Agreement." (Franchise Agmt. at 64). Accordingly, Plaintiff is entitled to recover $588,882.90 in liquidated damages from WHG and Vishwanath.

### iii.  Infringement Damages

The Lanham Act provides that a plaintiff is entitled to: "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). "[I]n a case involving use of a counterfeit mark or designation," the court may grant the trademark owner treble damages "if the violation consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . ." 15 U.S.C. § 1117(b). Willful infringement can be found where a defendant has knowledge of a trademark owner's existence but uses the mark anyway. *See Microsoft Corp. v. CMOS Techs.*, 872 F.Supp. 1329, 1329–41 (D.N.J. 1994) (holding that treble damages are only to be imposed if the defendant's infringement was intentional, knowing, or willfully blind); *Travelodge Hotels, Inc. v. Meridian Global Investments, LP*, No. 11-2599, 2012 WL 2341466, at *7 (D.N.J. June 15, 2012) (finding intentional infringement and awarding treble damages where "[d]efendants continued to

use [plaintiff's] Marks despite receiving cease and desist letters . . . .").

Plaintiff seeks infringement damages under the Lanham Act in the amount of $94,223.40. Plaintiff alleges that WHG reported a monthly average of $104,692.70 in gross room revenue, and therefore WHG should have paid Plaintiff $31,407.80 in Recurring Fees, which is 6% of $104,692.70 per month for five months.  Because the infringement is alleged to be deliberate and willful, Plaintiff seeks treble damages totaling $94,223.40.  (Pl. Mov. Br. at 10).

Though the Court agrees that infringement did occur, Plaintiff has failed to provide sufficient evidence that WHG's infringement was deliberate and willful.  In support of its Motion, Plaintiff submits a picture showing that on or around June 5, 2017, approximately two months after termination of the Franchise Agreement, WHG proceeded to cover the Wyndham® Marks with a tarp.  (Fenimore Aff. at 10 & 148).  The picture shows that the tarp was blown over by the wind, revealing the Wyndham® Marks.  (*Id.* at 148).  While the picture purports to show that WHG failed to remove the marks from the lodging facility after the Franchise Agreement was terminated, WHG's use of the tarp to cover the signage indicates that it did not have the required "deliberate disregard of a mark holder's rights" or engage in "deliberate and unnecessary duplicat[ion] of a plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured."  *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir.1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir.2005).  Thus, the Court finds that Plaintiff fails to show the requisite intent to entitle Plaintiff to treble damages.  Moreover, the Court finds that liability for infringement damages does not extend to Vishwanath, as such damages are beyond the scope of the Franchise Agreement and his status as guarantor.  (*See*

Franchise Agmt. at 64).   Accordingly, the Court finds that Plaintiff is entitled to recover infringement damages in the amount of $31,407.80 against WHG only.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion for default judgment.  An appropriate Order accompanies this Opinion.


Date: March 23, 2021


_s/Esther Salas_____
**Esther Salas, U.S.D.J.**